## W. B. SAMPSON, Constable, etc., v. MAURY NATIONAL BANK.

Middle Section. May, 1928.

Petition for Certiorari denied by Supreme Court, December 23, 1928.

W. W. Courtney, of Franklin, for plaintiff in error.

T. P. Henderson and John H. Henderson, of Franklin, for defendant in error.

HEISKELL, J.  J. T. Parham executed a mortgage to Maury National Bank to secure a note, conveying along with certain live stock, one saw-mill with engine, boiler and belt, same being on Leepers Creek, Second district of Williamson county. This mortgage was registered in Williamson county August 10, 1926.

J. M. Hutcherson recovered a judgment before J. O. Petway a Justice of the Peace of Williamson county, on February 1, 1926, against J. T. Parham and others. An execution was issued on the judgment on June 18, 1926, but after levy this was held up by the judgment creditor Hutcherson and is not relied on, and will not be noticed further. A second execution was issued July 13, 1926, and upon it is the following return:

"This execution executed by levying on one sawmill and belts & carriage & fixtures, one engine & boiler & fixtures on July 13, 1926. W. B. Sampson, C. W. C."

Another execution issued August 13, 1926, and same day was levied on same saw-mill by W. B. Sampson, Constable. Sale was advertised under this last execution but the property was replevied in this suit before time set for sale.

On August 23, 1926, Maury National Bank sued out the writ of replevin in this case against W. B. Sampson, C. W. C. The affidavit states that said bank is entitled to the following property, to-wit: "Sawmill, belts and fixtures and engine and boiler situated near Mabley's Cut, in Second district of Williamson county on two-acre tract of T. P. Parham and that said W. B. Sampson, C. W. C. has unlawfully seized and detained the same from Maury Nat. Bank which property is now in possession of said W. B. Sampson, C. W. C. . . ." The case was heard by the circuit judge without a jury and he decided in favor of plaintiff, Maury National Bank. That is, that the right under the mortgage was superior to that of Hutcherson under the levy of execution, Hutcherson having been substituted for the Constable. From this judgment Hutcherson has appealed and assigned errors.

There is a stipulation of facts in the record upon which the court below tried the case. It contains the facts set out above and concludes with this:

"Subject to exceptions and objections for relevancy and competency it is agreed that W. B. Sampson, Constable of Williamson county, to whom said executions were issued, would testify in substance as follows:

"'That under the execution issued July 13, 1926, which on the back is inadvertently marked "Issued 13 day of Feb., 1926," he advertised the sawmill, boiler, etc., for sale and on or about July 27th, sold same at public sale, when J. T. Parham bid same in; that Parham failed to comply with the terms of sale; that he was allowed several days in which to comply, but that he failed to do so, and that thereafter and about the first of August, he, Sampson, prepared notices or advertisements for another sale of the sawmill, had same sent to one Davis in the 2nd District of Williamson County, to be posted, but that on or about the day for said second sale, which was before the 13th day of August, 1926, he learned that Davis had not properly posted said advertisement, and that thereupon and on the 13th day of August, 1926, he had Petway, Justice of the Peace, to issue the execution, Exhibit No. 4, which is dated August 13, 1926, and thereupon advertised another sale to be had sometime between August 23 and August 26 which was not had because replevin suit was instituted.

" 'The plaintiff objects to the foregoing testimony of Sampson upon the ground that extrinsic evidence as to what the officer did or did not do, is incompetent and cannot be considered by the court, as the court must look alone to the return of the officer on execution, and it is not admissible to look beyond the return to any extrinsic evidence or matter in aid of the return.

" 'The court being of opinion that extrinsic evidence or parol evidence cannot be looked to in aid of the return sustains the objection made by plaintiff in above stipulation and defendant excepts.' "

The assignments of error are as follows:

First: The court erred in overruling motion for new trial, because there is no evidence to support and sustain the judgment and the evidence preponderates against the judgment of the court.

Second: The court erred in overruling motion for new trial, because the action of the court in sustaining objection to testimony of W. B. Sampson, as tendered, was erroneous.

Third: The court erred in overruling motion for new trial because the action of the court in finding the issues in favor of plaintiff, and in holding the lien of the chattel mortgage superior to the lien of the execution and superior to the officer's title by virtue of his levy, was erroneous.

It will be seen that the case presents a contest between the lien of the mortgage recorded August 10, and the claim of the judgment creditor by virtue of the levy of July 13. For the appellee bank it is contended that the taking out the execution of August 13th by the Constable Sampson was an abandonment of the levy of July 13, and that upon the execution of July 13, there was no sufficient return to keep alive the effect of the levy. That the execution of July 13, was functus officio and the levy under it of no effect.

The appellant insists that the authorities show that the levy of July 13, vested in the constable a special property in the mill levied on for the benefit of the judgment creditor which was not lost by failure to sell before the return day and not affected by the alias execution.

The first case is Overton v. Perkins, 10 Yerg., 328. The court says:

"Nothing is better settled, than that a sheriff who has levied on goods may sell them after the return of the writ and even after he goes out of office, without a venditioni exponas."

And again:

"Although the return day of the execution has passed, yet he may make the sale; not because he has made a levy only, but also because he has a special property. The special property he has in the goods must be the principal reason why he can exercise this power. For he may sell although he has ceased to be sheriff. The power to do so does not exist by reason of his official character, for he has ceased to be an officer, not because of any legal process, for he has none and that which he had is functus officio."

The court goes on to say that the officer by virtue of his special property sells for the benefit of the judgment creditor and can transfer title.

That case involved a levy on land and in the language quoted and more to the same effect, the court is drawing the distinction between a levy on personal and one on real property. For this reason counsel for appellee insists it is dicta. If it is dicta it is of a high order, for it goes to the reason for the decision, and besides it has been cited with approval and followed ever since in cases involving personal property.

In Lester's case, 4 Hum., 383, the execution was returned with endorsement of a levy, and not time to sell. A delivery bond was taken. This return was to the January term. On the 9th of March the sheriff endorsed on the old execution that he had re-levied on the same property. Another delivery bond was taken which was forfeited. On May 10, the sheriff professed to re-levy the same execution on the same property which he sold to satisfy the same on May 22. The court said:

"And the question is, whether the property was so treated under the first execution as to discharge its prior lien and subject these proceedings to the junior executions. Some absurd things took place on the part of the sheriff, as, for instance, his relevying in March and May by virtue of an execution which was returnable in January preceding.

"But while that could avail nothing, on the other hand, it would not disturb the attitude in which, by operation of law, the property had been placed.

"On the 18th of January, 1843, the property was levied on and the execution returned. This vested the legal title in the sheriff for the use of the plaintiff; it was custodia legis, and the sheriff, without further process or levy, might have sold, and ought to have sold the property levied on. The levy and the writ, although returned, would sustain the subsequent sale. This is a well-known and long-settled principle, not shaken, so far as relates to personalty, but established by the case of Overton v. Perkins."

The syllabus of Evans v. Barnes, 2 Swan, 291, gives the substance of that case on this question. It is:

"The levy of an execution upon personal property of the debtor vests the title to the property in the officer making the levy; and this title will remain in the officer unless it appear by clear and distinct proof that the plaintiff in the execution has waived his right to a satisfaction of his debt by a sale of the property. The mere fact that the property is levied upon in virtue of one execution, which is returned, and sold under an alias, does not amount to such waiver."

In the opinion the court said:

"But it is contended in this case that the sale having been made under an alias fieri facias, which was issued from the November term, 1850, of Rutherford circuit court, and tested on the twelfth day of that month, which was after the purchase of the plaintiff's, the first levy was waived, and the right by purchase must prevail. We do not think so. It is true that the plaintiff in the execution might waive the benefit of a levy in his favor, and release the sheriff from his liability and the property from the custody of the law, in which case the original owner would have the power to make a valid sale of it. But such waiver must be distinctly and clearly proved. It is not enough, to produce this effect, that another fieri facias was issued, which the sheriff re-levies upon the same property, and makes his sale upon it. He had a perfect right to sell, by virtue of the title vested in him by the first levy, without any execution; or, he might have retained the first execution and sold under it during the term to which it was returnable, or after the term, when it was functus officio. The issue of an alias, or another order of sale, was not necessary to continue his right under the previous levy. Even the taking of a delivery bond, on a levy afterwards made on the same execution, or an alias, without forfeiture, would not be a waiver of his title, or a forfeiture of his right to sell under the first levy. Lester's Case, 4 Humph., 383. The issuance and use of the last execution was merely nugatory and useless; at least it did not affect his right to the property derived from his original levy, which related to, and bound, the property from the test of the first execution, on the second Monday in July, 1850.

This case cites and approves both the 10 Yerger case and the 4 Humphreys case.

In Brown v. Allen, 3 Head, 430, the court, speaking of the title of a constable by virtue of levy of an execution from a Justice of the Peace, says:

"This title of the officer is not destroyed either by taking out an alias or an order of sale. Neither would the taking of a delivery bond on an alias, without forfeiture, have this effect. Evans v. Barnes, 2 Swan, 294. The subsequent proceedings would be simply nugatory, as the title vested in the officer by the levy would authorize him to sell at any time, even after the execution had become inoperative. Evans v. Barnes, 2 Swan, 294. Nothing short of the satisfaction of the debt, or some recognized act of abandonment, or waiver, either by the creditor or officer, could have the effect to destroy the title vested by the levy, or restore the right of property to the execution debtor."

These authorities will be found summed up in Note 47 under section 4755, Shannon's Code.

Much space is taken up in brief for appellee in citing authority to show that the return on this execution of July 13, was not a sufficient return, but the cases relied on are cases of a motion against an officer for failure to properly execute or return process. Those cases do not apply in a case like the present where the judgment creditor is not seeking to hold the officer liable for a default, but is claiming the benefit of the levy which is being attacked by a mortgage creditor to whom the officer owed no duty in handling the execution.

It is contended for appellee by virtue of the same authorities that the court below was right in excluding the testimony of Sampson. This does not follow from the cases cited. In a motion against the officer for an insufficient return, he cannot assist his return by parol evidence. It is a different thing when the officers supports his levy by parol explanation favorable to the creditor to whom he is responsible. However, under the authorities relied on by appellant we do not consider this testimony of the officer material. The return on the execution of July 13, shows the levy on the sawmill, and there is nothing to show a release or abandonment by Hutcherson, the execution creditor, or by the officer.

Another contention for appellee is, that the return does not contain a sufficient description of the property levied on to identify it. As to this it is sufficient to say that Maury National Bank by its representative asserted in the affidavit upon which the writ of replevin was obtained, that the constable Sampson had levied upon its sawmill and was in possession of same. The bank cannot sue out the writ of replevin on the ground that the officer is in possession of the sawmill by virtue of a levy, take the property from the possession of the officer under the writ of replevin, and then deny that the officer levied upon it.

We are of the opinion that when the property was taken from the officer, he held it for the benefit of the execution creditor and had a right to sell under his levy of July 13, 1926, and that it was error in the court below not to so hold. The case is reversed. Judgment will go against appellee and sureties on the replevin bond, with right to the appellant to have the case remanded, if so desired for the purpose of carrying out the order of this court.

Owen and Senter, JJ., concur.